UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GIOVANNA and MATIAS BULOX | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | Case No. |
| | § | |
| COOPERSURGICAL, INC. | § | |
| | § | |
| *and* | § | |
| | § | |
| THE COOPER COMPANIES, INC. | § | |
| | § | |
| *Defendants* | § | |

## PLAINTIFFS' PETITION AND JURY DEMAND

NOW COME Plaintiffs, Giovanna and Matias Bulox (hereinafter "Plaintiffs" and/or "Mrs. Bulox" ) by and through their counsel, Griffin Purnell, and for their cause of action against Defendants CooperSurgical, Inc. and The Cooper Companies, Inc. (collectively hereinafter "Defendants"), both jointly and severally, as the companies and/or successors in interest to the companies that designed, developed, manufactured, tested, labeled, packaged, distributed, marketed and/or sold the Filshie Clip medical device that was surgically used in Plaintiff and others throughout the United States and the world. Accordingly, Plaintiffs allege and state to the Court as follows:

## I. INTRODUCTION

1.       Plaintiffs bring this civil action to recover damages within the jurisdictional limits of this Court including all (1) General Damages; (2) Special Damages; and (3) Exemplary Damages as well as all other damages allowable under Texas law as a result of the design,

manufacture, surveillance, sale, marketing, advertising, promotion, labeling, packaging, and distribution of Filshie Clips.

2.      Filshie Clips are part of the "Filshie Clip method" for laparoscopic tubal ligation which involves applying a titanium clip with silicone rubber lining around each of the fallopian tubes. The Filshie Clip works by exerting continued pressure on the fallopian tube, causing avascularization for the 3 to 5 mm area it encompasses. The silicone continues this pressure even after necrosis starts and the fallopian tube decreases in size. Fibrosis then occurs, and the clip is peritonealized if all goes as planned.

3.      Plaintiffs bring claims fully set forth below asserting: (1) design defect; (2) manufacturing defect; (3) strict liability; (4) negligence; (5) gross negligence; and (6) exemplary damages.

4.      This claim arises from Giovanna Bulox's Filshie Clip tubal ligation procedure which, because of Defendants' defective product, resulted in a series of damages including without limitation, unwanted, unplanned, and unnecessary painful surgeries and loss.

## II.      PARTIES

5.      Plaintiffs, Giovanna and Matias Bulox live in The Woodlands, Texas, and are subject to the jurisdiction of this Court, and are deemed to be residents of the State of Texas for purposes of venue and jurisdiction.

6.      Defendants, The Cooper Companies, Inc. ("CooperCompanies") is a Delaware corporation with its principal place of business located at 6101 Bollinger Canyon Road, in San Ramon, California. For diversity of citizenship purposes, Defendant Cooper Companies, Inc. is a citizen of both Delaware and California. Cooper Companies, Inc. may be served with process by serving its registered agent at 6140 Stoneridge Mall Road, Suite 590, Pleasanton, CA 94588.

7. Defendant CooperSurgical, Inc. ("CooperSurgical") is a Delaware corporation with its principal place of business located at 95 Corporate Drive in Trumbull, Connecticut. CooperSurgical may be served with process by serving its registered agent at CooperSurgical, Inc., 95 Corporate Drive, Trumbull, CT 06611.

8. CooperSurgical is a subsidiary of Defendant Cooper Companies, Inc. Defendant CooperSurgical is a citizen of both Delaware and Connecticut for diversity of citizenship purposes. Defendants Cooper Companies, Inc. and CooperSurgical, Inc. are referred to collectively hereinafter as "CooperSurgical." All acts and omissions of the Defendant as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of its respective agencies, services, employments and/or ownership.

### III.    JURISDICTION & VENUE

9. This Court has subject matter original jurisdiction through diversity of citizenship pursuant to 28 U.S.C. §1332(a) because the Plaintiffs are citizens of Texas, the named Defendants are citizens of different states and the amount in controversy exceeds the sum of value of $75,000.00, exclusive of interest and costs.

10. This Court has specific jurisdiction over these Defendants because they purposefully availed themselves of the privilege of conducting business in the State of Texas and established minimum contacts sufficient to confer jurisdiction over these Defendants, and the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with constitutional requirements of due process. Namely, CooperSurgical sells its products and intends that they be used by medical professionals treating patients in Texas. Additionally, CooperSurgical maintains an office and warehouse in Stratford, Texas.

11.     At times relevant hereto and alleged herein, the Defendants conducted and continue to regularly conduct substantial business within the state of Texas, which included and continues to include, the research, safety surveillance, manufacture, sale, distribution and/or marketing of Filshie Clips which are distributed through the stream of interstate and intrastate commerce on state of Texas, and within the Southern District of Texas.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. §1965 (a) because a substantial part of the events or omissions giving rise to the claim occurred in this District and each Defendant transacts business affairs and conducts activity that gave rise to the claim of relief in this District.

## IV.     FACTUAL BACKGROUND

13.     A women's choice of birth control is a deeply personal decision, particularly when choosing a long-acting form of birth control like a tubal ligation which should permanently alter a women's body.

*CooperSurgical Designs and Promotes Defective Filshie Clips.*

14.     Defendants, CooperSurgical, designed, manufactured, sold and distributed Filshie Clips and related equipment utilized in Mrs. Bulox's tubal ligation.

15.     Created by Marcus Filshie in the late 1970s, more than 12 million women worldwide have undergone tubal ligation with the Filshie Clip method.

16.     The Filshie Clip works by exerting continued pressure on the fallopian tube, causing avascularization for the 3- to 5-mm area it encompasses. The silicone continues this pressure even after necrosis starts and the fallopian tube decreases in size. Fibrosis then occurs, and the clip is peritonealized. The clips are placed perpendicular to the isthmic portion of the tube,

so that it completely encompasses the tube and the lower edge of the jaw can be seen in the mesosalpinx.



[1]

***CooperSurgical Fails to Inform Patients of the Risks Associated with Filshie Clips.***

17.     It is of the utmost importance that women know all risks associated with a particular type of birth control given that a women's choice of birth control can have long-term consequences on her health.

18.     Women and their doctors depend on Defendants, the manufacturers and distributors of products like Filshie Clips, to be forthcoming about the safety and risks of Filshie Clips. This reliance on Defendants was warranted. The regulatory scheme that governs Filshie Clips is premised on a system whereby the manufacturer is responsible for reporting relevant safety information to the public.

---

[1] Medial drawing of Filshie Clips being applied in a laparoscopic and c-section procedure provided by CooperSurgical in their surgical products catalog.

19.    The onus is on the manufacturer to come forward with any safety risks because the public and the U.S. Food and Drug Administration ("FDA") would otherwise have no insight of adverse events.

20.    Defendants, however, failed to address the Filshie Clips safety issues, even though adverse event reports did or should have alerted them to a product defect causing the device to cause injuries. Rather than inform of the risks, CooperSurgical touts the benefits of the procedure over other available procedures.



(Clips shown actual size)

**The Filshie Tubal Ligation System Offers Physicians and Patients the Greatest Versatility in Female Sterilization**

This minimally invasive procedure can be effectively utilized in an interval laparoscopic approach, at the time of cesarean delivery, or after vaginal birth via minilaparotomy. The Filshie Tubal Ligation System requires minimal procedure time because there is no tying, transection or cauterization of the fallopian tubes – reducing the risk of damage to adjacent organs caused by electrocautery, and significantly lowering the risk of bleeding associated with other ligation methods that require tube transection.

**Safe and Successful Sterilization – For Use in Laparoscopic and C-Section Procedures**

Specific applicators have been designed for single- and dual-incision laparoscopy, or L & D procedures. A small titanium clip with soft Silastic® lining is positioned on the fallopian tube, encapsulating the entire circumference. Once applied, the silicone lining maintains pressure on the tube, resulting in complete tubal occlusion and eventual necrosis at the clip site. With a 99.7 percent efficacy rate, the Filshie Tubal Ligation System is one of the most effective sterilization procedures available today – even for thicker or edematous tubes. It is easy to learn and to use, and can be performed very quickly in either an inpatient or outpatient setting.

**Proven Benefits**
- No transection of tubes or surrounding tissue – may reduce the risk of bleeding
- Extremely high success rate of 99.7 percent[1]
- Lowest incidence of ectopic pregnancy[2,3]
- Minimal procedure time required – proven faster than the Pomeroy technique[4]
- Engineered to enclose thicker or edematous fallopian tubes
- MRI not contraindicated up to 3T
- Completely latex-free
- Only 4 mm of fallopian tube affected by clip

21.    Defendants had a duty to act as reasonable manufacturers. They had a duty to continually monitor their product, including, but not limited to, its design, manufacturing, performance, safety profile, and labeling. They had a duty to continually test their product and ensure it was safe and would perform as intended. Yet Defendants breached their duties and, as a result, Plaintiffs were injured.

22.     If Defendants had timely disclosed the propensity and severity of risks associated with use of the Filshie Clips, Plaintiffs' injuries could have been avoided. Yet, Defendants did nothing and for that, Plaintiffs here seek redress both to compensate them for their horrific losses and to strongly deter future, similar misconduct.

***Plaintiff is Implanted with CooperSurgical Filshie Clips.***

23.     On July 13, 2010, Plaintiff underwent a tubal ligation procedure performed by Dr. Rajender K. Syal at Memorial Herman The Woodlands Medical Center.

24.     The method of tubal ligation chosen among the variety available was the Filshie Clips.

was sharply dissected, however, could not be completely freed due to the plan of not removing the uterus at this time. Ovaries did appear normal. Tubes appeared normal. Posterior cul-de-sac was free of disease. No evidence of endometriosis.

Following this, a Filshie clip was placed approximately 3 to 4 cm from the uterine fundus on each side. Good occlusion was noted bilaterally.

Irrigation was performed. Hemostasis was assured. Instruments were removed. Gas was allowed to escape. Incisions were closed. The patient was taken to the recovery room in stable condition.

25.     Plaintiff was provided with a Disclosure and Consent for medical and surgical procedures which included generic risks and hazards associated with the procedure. No mention was made of the risk of migration and the appurtenant damages that could be caused by the Filshie Clips. The only risks mentioned were associated with the ligation procedure itself.



26. Several years later, Plaintiff began to experience discomfort and pain.

27. Plaintiff sought medical attention but, because CooperSurgical failed to report adverse events and pass on information to healthcare providers regarding the risk of migration and appurtenant damages, it was thought she was experiencing gallbladder problems or other non-specific bowel complications.

28. Ultimately Plaintiff's gallbladder was removed in an attempt to resolve her discomfort and pain.

***CooperSurgical's Filshie Clips Malfunction while Plaintiff is Travelling Over-Seas.***

29. In August of 2019, while travelling in Italy, Plaintiff began experiencing extreme pain and irritation.

30. The Italian doctors were not able to identify the cause of her problems, and knowing Plaintiff had a flight home to Houston, she was re-hydrated and discharged with instructions to seek medical attention upon her return to the United States.

31. Immediately upon landing in Houston, Texas, Plaintiff was taken directly to Saint Luke's Hospital in The Woodlands.

32.     Upon arrival at the Hospital she was admitted, and doctors quickly initiated treatment for her severe pain. After three days, she was taken into surgery where her surgeon discovered a Filshie Clip that had migrated from its designed location, the fallopian tube, on and through the intestinal wall.

> Received in formalin labeled with the patient's name (Bulox) and medical record number.
>
> Specimen A: Received in formalin labeled as "foreign body" is a silver-gray metal clip, which grossly appears to be a Filshie clip from a tubal ligation. This metal clip measures 1.4 x 0.3 x 0.3 cm. There are no inscriptions or serial numbers noted. There is no adherent tissue. No sections will be submitted. JF/ew

33.     The Filshie Clip that had migrated and penetrated into the intestinal wall was identified by the surgeon, photographed in place, and subsequently removed. The clip was clearly still closed as indicated by the arrow below.



34. As a result, on August 10, 2019, the date of the Filshie Clip was identified and removed, Plaintiff discovered the cause of her discomfort and pain had been the Filshie Clip that had migrated and penetrated her intestine.

35. Upon discharge, Dr. Eads, a medical doctor practicing as an obstetrician and gynecologist, took over her care. He determined that a second Filshie Clip had also migrated and, as a result, Plaintiff was forced to submit to yet another surgical procedure on November 5, 2019. This surgery occurred at Hermann Memorial Hospital in The Woodlands.

36.    The design, manufacture and instructions of the CooperSurgical products at issue in this case exhibited several defects that violated common-sense consumer expectations, as well as the expectations of the medical professionals involved in gynecological care.

37.    The Filshie Clips, which were warranted, marketed, and purported to be permanently in place on the fallopian tubes, were defective.

38.    Evidence of the Filshie Clips propensity to migrate was available to CooperSurgical and should have been relayed to the physicians by way of warning on the product packaging or other dissemination of the information.

39.    To date, CooperSurgical has failed to adequately warn of these dangers, and certainly hadn't done so at the time Plaintiff consented to the Filshie Clip method of sterilization or any time leading up to the removal of the defective clips in 2019. As a result of the design, manufacture, and marketing defects of the Filshie Clips, Plaintiff (and a large number of the women in the world who had submitted to their use) has experienced significant pain, suffering, and surgeries she otherwise would not have had she chosen one of the other methods of sterilization available to women.

## V.    THE DISCOVERY RULE APPLIES TO THIS MATTER

40.    All of the allegations contained in the previous paragraphs are realleged herein.

41.    Plaintiffs plead that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew, or through the exercise of reasonable care and diligence should have known, of facts indicating that the Plaintiff had been injured, the cause of the injury and the tortious nature of the wrongdoing that caused the injury.

42.    Despite diligent investigation by Plaintiff of the cause of her injuries, including consultations with Plaintiff's medical providers, the nature of Plaintiff's injuries and damages and

their relation to Filshie Clips and Defendants' wrongful conduct was not discovered and could not have been discovered, until a date within the applicable statute of limitations for filing each of Plaintiffs' claims.

43. Therefore, under appropriate application of the discovery rule, Plaintiffs' suit was filed within the applicable statutory limitations period, namely, within two years of the surgery where the Filshie Clips were discovered to have migrated and caused all the complications Plaintiff experienced. It was at this time that Plaintiff became aware of, finally, the cause of all of her complications.

44. Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of material facts known by the Defendants when they had a duty to disclose those facts.

45. The Defendants' purposeful and fraudulent acts of concealment have kept Plaintiffs ignorant of vital information essential to the pursuit of Plaintiffs' claims, without any fault or lack of diligence on Plaintiffs' part, for the purpose of obtaining delay on Plaintiffs' filing of their causes of action.

46. Defendants are estopped from relying on the statute of limitations defense because Defendants failed to timely disclose, among other things, facts evidencing the defective and unreasonably dangerous nature of their Filshie Clips.

## VI.     CAUSES OF ACTION

## <u>COUNT 1</u>: ALL DEFENDANTS – PRODUCTS LIABILITY – DESIGN DEFECT

47. All of the allegations contained in the previous paragraphs are realleged herein.

48.     The Filshie Clips are inherently dangerous and defective, unfit and unsafe for their intended use and reasonably foreseeable uses and does not meet or perform to the expectations of patients and their health care providers.

49.     The Filshie Clips reached their intended consumer without substantial change in the condition in which they were in when they left Defendants' possession.

50.     The Filshie Clips were defective in design because they failed to perform as safely as persons who ordinarily use the products would have expected at the time of use.

51.     The Filshie Clips used in Plaintiff were defective in design, because Filshie Clips risk of harm exceed their claimed benefits.

52.     Plaintiff and her healthcare providers used the Filshie Clips in a manner that was reasonably foreseeable to the Defendants.

53.     Neither Plaintiff nor her healthcare providers could have by the exercise of reasonable care discovered the Filshie Clips' defective conditions or perceived their unreasonable dangers prior to use.

54.     As a result of the foregoing design defects, the Filshie Clips created risks to the health and safety of Plaintiff that were far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the Filshie Clips.

55.     Defendants have intentionally and recklessly designed the Filshie Clips with wanton and willful disregard for the rights and health of the Plaintiff and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others.

56.     As a proximate result of the Defendants' design of the Filshie Clips, Plaintiff has been injured catastrophically, and sustained severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

57.     As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendants' conduct.

## <u>COUNT 2</u>: ALL DEFENDANTS - PRODUCTS LIABILITY – MANUFACTURING DEFECT

58.     All of the allegations contained in the previous paragraphs are realleged herein.

59.     Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, performed medical vigilance, distributed and sold the Filshie Clips that were used on Plaintiff.

60.     The Filshie Clips used in Plaintiff contained a condition or conditions, which Defendants did not intend, at the time the Filshie Clips left Defendants' control and possession.

61.     Plaintiff and Plaintiff's health care providers used the device in a manner consistent with and reasonably foreseeable to Defendants.

62.     As a result of this condition or these conditions, the product failed to perform as safely as the ordinary consumer would expect, causing injury, when used in a reasonably foreseeable manner.

63.     The Filshie Clips were defectively and/or improperly manufactured, rendering them defective and unreasonably dangerous and hazardous to Plaintiff.

64.     Defendants have intentionally and recklessly manufactured Filshie Clips with wanton and willful disregard for the rights and health of the Plaintiff and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others.

65.     As a proximate result of the Defendants' manufacture of Filshie Clips, Plaintiffs have been injured catastrophically, and sustained severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

66.     As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendants' conduct.

## <u>COUNT 3</u>: ALL DEFENDANTS - STRICT LIABILITY

67.     All of the allegations contained in the previous paragraphs are realleged herein.

68.     Filshie Clips are inherently dangerous and defective, unfit and unsafe for their intended use and reasonably foreseeable uses and do not meet or perform to the expectations of patients and their health care providers.

69.     Filshie Clips were expected to, and did, reach their intended consumer without substantial change in the condition in which they were in when they left Defendants' possession.

70.     The Filshie Clips that were used in Plaintiff were defective in design because they failed to perform as safely as persons who ordinarily use the products would have expected at time of use.

71.     The Filshie Clips used in Plaintiff were defective in design, in that the Filshie Clips risks of harm exceeded its claimed benefits.

72.     Plaintiff and her healthcare providers used the Filshie Clips in a manner that was reasonably foreseeable to the Defendants. Neither Plaintiff nor her healthcare providers could have by the exercise of reasonable care discovered the Filshie Clips defective conditions or perceived its unreasonable dangers prior to her implantation of the device.

73. As a result of the foregoing design defects, the Filshie Clips created risks to the health and safety of its users that were far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the Filshie Clips.

74. Defendants have intentionally and recklessly designed Filshie Clips with wanton and willful disregard for the rights and health of the Plaintiff and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others.

75. As a proximate result of the Defendants' design of Filshie Clips, Plaintiff has been injured catastrophically, and sustained severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

76. As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendants' conduct.

## COUNT 4: ALL DEFENDANTS - NEGLIGENCE

77. All of the allegations contained in the previous paragraphs are realleged herein.

78. At times relevant, Defendants were in the business of designing, developing, setting specifications, manufacturing, marketing, selling and/or distributing Filshie Clips, including the two that were used on Plaintiff.

79. Defendants had a duty to exercise reasonable and ordinary care in the manufacture, design, labeling, instructions, warnings, sale, marketing, safety surveillance and distribution of Filshie Clips so as to avoid exposing others to foreseeable and unreasonable risks of harm.

80.     Defendants breached their duty of care to the Plaintiff and her physicians, in the manufacture, design, labeling, warnings, instructions, sale, marketing, safety surveillance, and distribution of Filshie Clips.

81.     Defendants had a duty to warn Plaintiff, Plaintiff's physician, and/or the medical community of the potential for migration.

82.     Defendants knew or reasonably should have known that Filshie Clips are dangerous or likely to be dangerous when used in their intended or reasonably foreseeable manner.

83.     At the time of the manufacture and sale of the Filshie Clips Defendants knew or should have known that Filshie Clips were designed and manufactured in such a manner so as to present an unreasonable risk of migration when placed on the fallopian tubes.

84.     At the time of the manufacturer and sale of the Filshie Clips Defendants knew or should have known that Filshie Clips were designed and manufactured to have unreasonable and insufficient capacity to stay closed or to apply enough pressure in order to avoid migrating from the fallopian tubes.

85.     At the time of the manufacture and sale of the Filshie Clips Defendants knew or should have known that using Filshie Clips for its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe injuries, including but not limited to additional surgeries and/or medical procedures in order to remove the migrated Filshie Clips, even leading to the need for a hysterectomy or penetration of organs, such as the bowel, by the Filshie Clips.

86.     Defendants knew or reasonably should have known that the consumers of the Filshie Clips would not realize the danger associated with using the device for its intended use and/or in a reasonably foreseeable manner.

87. Defendants breached their duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the Filshie Clips in, among others, the following ways:

(a) Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking measures to reduce or avoid harm;

(b) Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other devices or procedures available for the same purpose;

(c) Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications;

(d) Failing to use reasonable care to warn or instruct Plaintiff, Plaintiff's healthcare providers or the general health care community about Filshie Clip's substantially dangerous condition or about facts making the product likely to be dangerous, including pre-and post-sale;

(e) Failing to perform reasonable pre-and post-market testing of the Filshie Clips to determine whether or not the product was safe for its intended use;

(f) Failing to provide adequate instructions, guidelines, and safety precautions, to those persons to whom it was reasonably foreseeable would recommend, use, implant and remove the Filshie Clips;

(g) Advertising, marketing and recommending the use of the Filshie Clips, while concealing and failing to disclose or warn of the dangers known by the Defendants to be connected with and inherent in the use of the Filshie Clips;

(h) Representing that Filshie Clips were safe for their intended use when in fact, Defendants knew and should have known the product was not safe for its intended purpose;

(i) Continuing manufacture and sale of Filshie Clips with the knowledge that the they were dangerous and not reasonably safe, and failing to comply with FDA manufacturing regulations;

(j) Failing to use reasonable and prudent care in the design, research, manufacture, and development of Filshie Clips so as to avoid the risk of serious harm associated with the use of the Filshie Clips;

(k)     Failing to establish an adequate quality assurance program used in the manufacturing of the Filshie Clips;

(l)     Failing to establish and maintain an adequate post-marketing surveillance program for Filshie Clips;

(m)    Failing to adequately and correctly report safety information related to the Filshie Clips product resulting in inadequate warnings; and

(n)     Failing to provide adequate and continuous warnings about the inherent danger of migration with Filshie Clips after they had been placed on the fallopian tubes.

88.    A reasonable manufacturer, distributor, and/or seller under the same or similar circumstances would not have engaged in the aforementioned acts and omissions.

89.    As a proximate result of the Defendants' design, manufacture, marketing, sale and/or distribution of the Filshie Clips, Plaintiff has been injured catastrophically, and sustained severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of reproductive health, comfort, and economic damages.

90.    As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendant's conduct.

## <u>COUNT 5</u>: ALL DEFENDANTS - STRICT LIABILITY FAILURE TO WARN

91.    All of the allegations contained in the previous paragraphs are realleged herein.

92.    Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and sold the Filshie Clips, including the ones used on Plaintiff, in stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers.

93.    At the time Defendants designed set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and sold the Filshie Clips in

the stream of commerce, Defendants knew or should have known that the device presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use.

94.     Specifically, Defendants knew or should have known that the Filshie Clips posed a significant risk of migration from the used site, resulting in significant injuries.

95.     Defendants had a duty to warn of the risk of harm associated with the use of the device and to provide adequate warnings concerning the risk the device could migrate, even if used properly.

96.     The Defendants had a continuing duty to warn Plaintiff, Plaintiff's physician, and/or the medical community of the potential for migration of the Filshie Clips.

97.     Defendants failed to properly and adequately warn and instruct the Plaintiff and her health care providers with regard to the inadequate research and testing of the Filshie Clips, and the complete lack of a safe, effective procedure for preventing migration.

98.     The risks associated with the Filshie Clips are of such a nature that health care providers and users could not have recognized the potential harm.

99.     The Filshie Clips were defective and unreasonably dangerous at the time of their release into the stream of commerce due to the inadequate warnings, labeling and/or instructions accompanying the product, including but not limited to, the potential for migration from intended location after placement on the fallopian tubes.

100.     The Filshie Clips, when used in Plaintiff, were in the same condition as when they were manufactured, inspected, marketed, labeled, promoted, distributed and sold by the Defendants.

101.     The Defendants intentionally, recklessly, and maliciously misrepresented the safety, risks, and benefits in order to advance their own financial interests, with wanton and willful disregard for the rights and health of the Plaintiff.

102.     As a proximate result of the Defendants' design, manufacture, marketing, sale and/or distribution of the Filshie Clips, Plaintiff has been injured catastrophically, and sustained severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of reproductive health, comfort, and economic damages.

103.     As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendant's conduct.

## <u>COUNT 6</u>: ALL DEFENDANTS - VIOLATION OF CONSUMER PROTECTION LAWS

104.     All of the allegations contained in the previous paragraphs are realleged herein.

105.     Plaintiff purchased and used the Filshie Clips primarily for personal use thereby suffering ascertainable losses as a result of the Defendants' actions in violation of the consumer protection laws.

106.     Had the Defendants not engaged in the deceptive conduct described herein, Plaintiff and her physicians would not have purchased and/or paid for the Filshie Clips and would not have incurred related medical costs and injury.

107.     The Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, moneys from Plaintiff for the Filshie Clips that were used into her, and that would not have been paid for had the Defendants not engaged in unfair and deceptive conduct.

108.     Unfair methods of competition of deceptive acts or practices that were proscribed by law, including the following:

(a)    Representing that goods or services have characteristics, ingredients, uses benefits or quantities that they do not have;

(b)    Advertising goods or services with the intent not to sell them as advertised; and

(c)    Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion and/or misunderstanding.

109.    Plaintiff was injured by the cumulative and indivisible nature of the Defendants' conduct. The cumulative effect of the Defendants' conduct directed at patients, physicians and consumers, including the Plaintiff and her physicians, was to create demand for and promote the sale of the Filshie Clips. Each aspect of the Defendants' conduct combined to artificially create sales of the Filshie Clips.

110.    The Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, labeling, development, manufacture, promotion, and sale of the Filshie Clips.

111.    Had the Defendants not engaged in the deceptive conduct described above, Plaintiff would not have purchased and/or paid for the Filshie Clips and would not have incurred related medical costs.

112.    The Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to patients, physicians and consumers, including Plaintiff and her physicians, constituted unfair and deceptive acts and trade practices in violation of the state and Federal consumer protection statutes.

113.    The Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts, or trade practices in violation of state and Federal consumer protection statutes, including but not limited to the Deceptive Trade Practices-Consumer Protection Act, TEX. BUS. & COM. CODE ANN. §17.41, *et. seq.*

114.     The Defendants have engaged in unfair competition or unfair or deceptive acts or trade practices or have made false representations in violation under the statute listed above to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, the Defendants are the suppliers, manufacturers, advertisers, and sellers, who are subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

115.     The Defendants violated the statutes that were enacted to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that the Filshie Clips were fit to be used for the purpose for which they were intended, when in fact they were defective and dangerous, and by other acts alleged herein. These representations were made in uniform promotional materials and product labeling.

116.     The actions and omissions of the Defendants alleged herein are uncured or incurable deceptive acts under the statutes enacted in the states to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

117.     The Defendants had actual knowledge of the defective and dangerous condition of the Filshie Clips and failed to take any action to cure such defective and dangerous conditions.

118.     Plaintiff and her implanting physicians and surgeons relied upon the Defendants' misrepresentations and omissions in determining which product and/or procedure to undergo and/or perform.

119.     The Defendants' deceptive, unconscionable or fraudulent representations and material omissions to patients, physicians and consumers, constitute unfair and deceptive acts and practices.

120.     By reason of the unlawful acts engaged by the Defendants, and as a direct and proximate result thereof, Plaintiff has suffered ascertainable losses and damages.

121.     As a proximate result of the Defendants' design, manufacture, marketing, sale and/or distribution of the Filshie Clips, Plaintiff has been injured catastrophically, and sustained severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of reproductive health, comfort, and economic damages.

122.     As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendant's conduct.

## <u>COUNT 7</u>: ALL DEFENDANTS - GROSS NEGLIGENCE

123.     All of the allegations contained in the previous paragraphs are realleged herein.

124.     The wrongs done by the Defendants were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiff, for which the law would allow, and which Plaintiff will seek at the appropriate time under governing law for the imposition of exemplary damages, in that Defendants' conduct was specifically intended to cause substantial injury to Plaintiff; or when viewed objectively from Defendants' standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; or included material representations that were false, with Defendants, knowing that they were false or with reckless disregard as to the truth and as a positive assertion, with the intent that the representation is acted on by Plaintiff.

125.     Plaintiff and her physicians relied on the representations of Defendants and suffered injury as a proximate result of this reliance.

126.     Plaintiffs therefore will seek to assert claims for exemplary damages at the appropriate time under governing law in an amount within the jurisdictional limits of the Court.

127.     Plaintiffs also allege that the acts and omissions of Defendants, whether taken singularly or in combination with others, constitute gross negligence that proximately caused the injuries to Plaintiff. In that regard, Plaintiffs will seek exemplary damages in an amount that would punish Defendants for their conduct and which would deter other manufacturers from engaging in such misconduct in the future.

128.     As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendant's conduct.

## <u>COUNT 8</u>: ALL DEFENDANTS - EXEMPLARY DAMAGES

129.     All of the allegations contained in the previous paragraphs are realleged herein.

130.     At times material hereto, Defendants knew or should have known that their Filshie Clips, as designed, manufactured, assembled, sold and/or distributed were inherently dangerous.

131.     At times material hereto, Defendants attempted to misrepresent and did misrepresent facts concerning the safety of their Filshie Clips.

132.     Defendants' misrepresentations included knowingly withholding material information from the public and consumers alike, including Plaintiff, concerning the safety of the Filshie Clips.

133. At times material hereto, Defendants knew and recklessly disregarded the fact that their Filshie Clips could cause serious, disabling, and permanent injuries to individuals such as Plaintiff.

134. Notwithstanding the foregoing, Defendants continued to aggressively market and promote their Filshie Clips, without disclosing the risks.

135. As a proximate result of Defendants' willful, wanton, careless, reckless, conscious, and deliberate disregard for the rights and safety of their consumers, Plaintiff suffered severe and permanent physical and emotional injuries, endured pain and suffering, and has suffered economic loss, including incurring significant expenses for medical care and treatment, and will continue to incur such expenses in the future.

136. Defendants' aforesaid conduct was committed with knowing, conscious, careless, reckless, willful, wanton, and deliberate disregard for the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and deter them from similar conduct in the future.

137. As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendants' conduct.

## VII.    RESERVATION OF RIGHTS

138. Plaintiffs reserve the right to prove the amount of damages at trial. Plaintiffs reserve the right to amend its Petition to add or remove counts upon further discovery and as its investigation continues.

## VIII.   JURY DEMAND

139. Pursuant to Federal Rule of Civil Procedure 38(c), Plaintiffs hereby request that all

causes of action alleged herein be tried before a properly impaneled jury.

## IX. PRAYER FOR RELIEF – DAMAGES

140. The conduct of the Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages to Plaintiffs and of the following general and special damages including:

(a) All available compensatory damages for the described losses with respect to each cause of action;

(b) Past and future medical expenses, as well as the cost associated with past and future life care;

(c) Past and future lost wages and loss of earning capacity;

(d) Past and future emotional distress;

(e) Consequential damages;

(f) All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

(g) Loss of consortium damages for both Plaintiffs;

(h) Damages to punish Defendants for proximately causing physical pain and mental anguish;

(i) Enter judgment against Defendants, jointly and severally, awarding Plaintiff damages in an amount to be determined at trial and their costs and reasonable attorney's fees including, compensatory damages in an amount sufficient to fairly and completely compensate them for all damages;

(j) Punitive damages;

(k) Attorney's fees;

(l) Prejudgment and post judgment interest, costs, and disbursements;

(m) Any and all other recoverable personal injury damages for Plaintiffs; and

(n) Such and further relief at law or in equity as this Court may deem just and appropriate.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand that the Defendants be cited to appear and answer herein. Upon final judgment against the Defendants, and each of them, jointly and severally, awarding Plaintiffs damages in an amount to be determined at trial and their costs and reasonable attorney's fees including, compensatory damages in an amount sufficient to fairly and completely compensate them for all damages listed herein and such and further relief at law or in equity as this Court may deem just and appropriate.

Dated: July 16, 2021

Respectfully submitted,

GRIFFIN PURNELL LLC

By: */s/ Simon B. Purnell*
SIMON B. PURNELL (attorney-in-charge)
TX State Bar No. 24003889
SDTX Bar No. 23509
simon@griffinpurnell.com

DANIEL R. GRIFFIN
TX State Bar No: 24118060
SDTX Bar No. 3656581
dan@griffinpurnell.com

CHARLES E. HARDY JR.
TX State Bar No. 24107661
chase@griffinpurnell.com

615 N. Upper Broadway, Suite 900
Corpus Christi, TX 78401
Telephone: (361) 500-2804

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 16th day of July, 2021, a true and correct copy of the foregoing document was filed electronically with the Court's ECF system for service to all counsel of record.

GRIFFIN PURNELL LLC

By: */s/ Simon B. Purnell*_____